**Sekou KEITA, Petitioner,**

v.

**DEPARTMENT OF HOMELAND SECURITY, Immigration and Naturalization Service, Respondent.**

**No. 05–1649–ag.**

United States Court of Appeals, Second Circuit.

May 25, 2006.

Theodore Vialet, New York, New York, for Petitioner.

Thomas A. Marino, United States Attorney for the Middle District of Pennsylvania, Stephen R. Cerutti II, Assistant United States Attorney, Harrisburg, Pennsylvania, for Respondent.

PRESENT: Hon. WILFRED FEINBERG, Hon. JOSÉ A. CABRANES, and Hon. PETER W. HALL, Circuit Judges.

### SUMMARY ORDER

Sekou Keita petitions for review of the BIA's March 2005 decision affirming Immigration Judge ("IJ") Gabriel Videla's order denying Keita's applications for asylum and withholding of deportation. Keita challenges the IJ's adverse credibility determination. We presume the parties' familiarity with the underlying facts and procedural history.

When the BIA summarily affirms the IJ, this Court reviews the IJ's decision as the

final agency determination. *See, e.g., Twum v. INS,* 411 F.3d 54, 58 (2d Cir. 2005). We review adverse credibility determinations under the substantial evidence standard, treating them as "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see Zhou Yun Zhang v. INS,* 386 F.3d 66, 73 & n. 7 (2d Cir.2004).

The IJ found Keita incredible because his testimony contained inconsistencies and implausibilities. The IJ noted inconsistencies in Keita's testimony concerning how long he was hospitalized after his release from prison in May 1995, where Keita lived between the time of his release from prison in May 1995 and his departure from Guinea in August 1995, and whether Keita and his sister Assa were arrested on the same day in December 1993 and May 1995. The IJ also described inconsistencies between Keita's testimony and statements made by Assa in her own asylum application concerning the year in which they were arrested together after a political rally, whether they were arrested together in May 1995, and how long they were imprisoned together in 1985. The IJ also found it implausible that Keita would carry incriminating documents such as his arrest warrant and summons with him as he traveled in disguise.

The IJ further found that a number of Keita's uncorroborated assertions were insufficiently credible, persuasive, and specific to sustain his burden of proof. In particular, the IJ found that Keita did not sufficiently prove his identity as the son of Mamadi Keita, the former Education Minister of Guinea, because he failed to present any identifying document with his photograph or to provide persuasive statements from individuals who knew him in Guinea. The IJ also drew an adverse inference from Keita's inadequately explained failure to have his sister testify or

submit a statement on his behalf even though she had been granted asylum, lived in New York and, according to Keita, could have corroborated his testimony.

The IJ also found that Keita failed to rebut allegations that his documentary evidence is fraudulent. A 1998 forensic report from the United States Embassy in Conakry concluded that the copies of Keita's summons, arrest warrant and certificate of release were fraudulent because they were created with a computer or electronic typewriter, and judicial and prison documents in Guinea are produced with manual typewriters. Keita submitted an October 2000 letter from the head clerk of the Appeals Court in Conakry stating that the relevant Guinean entities generally use computers and electric typewriters. The IJ credited the forensic report because the head clerk's letter did not specify how long the government had been using that technology. The IJ further found that the documents were intrinsically suspect because they contained inconsistent dates and were purportedly issued by implausible agencies. The IJ discredited as unpersuasive and vague a May 1995 medical report issued by the largest hospital in Conakry diagnosing Keita as "ill." Lastly, the IJ considered Keita's "admission that the RPG [political party] had the willingness and wherewithal to issue fraudulent documents to its members in order to facilitate their escape from Guinea."

The IJ's adverse credibility determination is supported by substantial evidence. While some of the inconsistencies relied upon by the IJ were relatively minor, Keita's testimony generally was undermined by suspect and unpersuasive supporting documentation and other uncorroborated assertions of insufficient veracity. *See Diallo v. INS,* 232 F.3d 279, 288 (2d Cir. 2000) (stating that minor and isolated inconsistencies in petitioner's testimony need

not be fatal if testimony is otherwise generally consistent, rational, and believable); *see also id.* at 287 (stating that lack of corroborating evidence may also bear on credibility as long as it does not form sole basis for adverse credibility determination). Reviewing the record as a whole, we cannot conclude that a reasonable adjudicator would be compelled to credit Keita's testimony.

For the foregoing reasons, the petition for review is DENIED. Having completed our review, the pending motion for a stay of removal in this petition is DENIED as moot.